Pearson, J.
 

 Many depositions were taken on both sides, but it is not necessary to advert to the proof, because the allegations of the bill are so general and uncertain, that it is impossible to declare the facts necessary to entitle the plaintiff to a decree.
 

 In all bills, to entitle the plaintiff to a decree, there must be proper allegations. Proof without allegations will no more answer the purpose, than allegations without proof. There must be
 
 “allegata etprobata”
 
 It is true, the same degree of certainty is not required in pleadings in Equity, as is required in pleadings at law, hut there must be some certainty, and the facts material to make out the plaintiff’s equity must be alleged in a manner to enable the defendant to take issue, and' to enable the Court to see what it is, that the plaintiff insists upon. If a bill should charge, "that the defendant practised a fraud
 
 *338
 
 upon tlie plaintiff,” without stating in what the fraud consisted, or in what way it was effected, every one would admit, that the allegation was too general and uncertain.
 

 The allegation of the mistake or accident, by which it happened, in this case, that the deed made by Guilford to Stephen Gaskins did not include the land, which the parties intended, is as general and uncertain, as in the case supposed above. The allegation is, that in the partition of land of Adam Gaskins, lot No. 5 was allotted to Guilford Gaskins ; That he contracted to sell lot No, 5 to Stephen Gaskins ; but that “by mistake or accident the land was so described therein, as not to embrace or convey the same.” This is wholly uncertain, and yet it js the “gist”of the plaintiff’s case.
 

 The bill should have set out the metes and boundaries of lot No’ 5, or identified the land in some other way, the metes and boundaries of the deed and the manner in which the alleged mistake or accident occurred, as that the draughtsman copied the metes and boundaries of lot No. 4 by mistake, instead of the metes and boundaries of lot No. 5, if such was the fact; or that in the boundaries, a, certain line was by mistake, written
 
 “South”
 
 so many poles, instead of
 
 “North”
 
 so many poles, if such was the fact. In short, it should have stated the manner in which the thing happened, and given some idea of what it is, about which the plaintiff complains.
 

 The bill in another allegation states, that, afier his purchase, Stephen Gaskins took possession of the said lot, and continued in possession until 1842, “when he sold the same, for the full value, to the plaintiff, who had full confidence in the validity of his title to the same.” It do -s not appear, whether the deed made by Stephen Gaskins to the plaintiff, if he made one, correctly desciibes lot. No. 5, or follows the description in the deed made by Guilford ; in which latter case it would be material to allege, that the plaintiff intended to buy lot No. £>,, and how it
 
 *339
 
 happened, that there was the mistake or accident in this deed, if such was the fact. Copies of the report of the commissioners, who made the partition, of the deed of Guilford Gaskins to Stephen Gaskins, and of the deed of Stephen Gaskins to the plaintiff are filed as exhibits.
 

 Exhibits do not make a part of the bill, but are a part of the proof, and cannot aid defective statements in the bill, any more than any other part of the proof.
 

 But if we go out of the bill, and look into the exhibits, we can see no light. Lot No. 5, has certain metes and bounds — the deed of Guilford Gaskins has . metes and bounds entirely different, and makes no reference to lot No. 5, nor do its metes and bounds correspond with those of any of the other lots, or with any one corner or line of any of the lots. The deed of Stephen Gaskins to the plaintiff has the same metes and bounds, as the deed of Guilford, and makes no. mention of lot No. 5.
 

 We think the bill is defective for uncertainty, and it must be dismissed with cost. ,
 

 Per Curiam.
 

 Bill dismissed with costs.